UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

THOMAS MCMICHAEL, III,

                 Plaintiff,                         Case No. 5:19-cv-13098
                                                    District Judge Judith E. Levy
v.                                                  Magistrate Judge Anthony P. Patti

ADAM DIROFF, *et al*.,

                 Defendants.

_____/

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION TO GRANT IN PART AND DENY IN PART THE MOTION FOR SUMMARY JUDGMENT FILED BY DEFENDANTS DIROFF AND SALDANA (ECF No. 17)

**I.     RECOMMENDATION**:  The Court should **GRANT IN PART** and

**DENY IN PART** the motion for summary judgment filed by Defendants Adam

Diroff and Daniel Saldana.  (ECF No. 17.)

**II.    REPORT**

        **A.    Background**

               **1.    Factual Background**

        On October 22, 2019, Plaintiff Thomas McMichael, III, proceeding *in pro*

*per*, filed the instant lawsuit under 42 U.S.C. § 1983 against Michigan State Police

Troopers Adam Diroff and Daniel Saldana, and Border Patrol Agent Matthew

McFadden,[1] in their individual and official capacities.  (ECF No. 1, PageID.4-6.)[2]

He claims multiple counts of excessive force in violation of the Fourth

Amendment, cruel and unusual punishment under the Eighth Amendment, and

violation of his equal protection rights under the Fourteenth Amendment, as well

as failure to intervene and assault and battery under Michigan law.  (ECF No. 1,

PageID.12-14, ¶¶ 12-30.)

   The underlying facts, as alleged by Plaintiff and with reference to video

evidence, are as follows.  On May 2, 2018, Plaintiff was subject to a traffic stop by

Diroff.  (ECF No. 1, PageID.9, ¶ 2.)  According to Plaintiff, Diroff forced entry

into his car, lunged at him screaming a derogatory racial term, and punched and

elbowed him in the face.  (ECF No. 1, PageID.9, ¶ 3.)  Video then depicts

Defendants Saldana and McFadden on scene as backup, and Plaintiff driving away

from the traffic stop with Defendant Diroff in the car, crossing three lanes of fast-

moving highway traffic and coming to a stop in the median safety ditch, where he

---

[1] As of the writing of this Report and Recommendation, no waiver of service has
been returned by, nor appearance filed on behalf of, McFadden.  The United States
Marshal Service (USMS) acknowledged receipt of service of process documents
for him on October 7, 2021.  (ECF No. 20.)

[2] Plaintiff's complaint may be considered an unsworn declaration under 28 U.S.C.
§ 1746 because he states, above his signature, "I Declare under penalty of perjury
all herein is true per 28 USC 1746."  (ECF No. 1, PageID.25.)

exited or was removed from the car and eventually arrested.  (Exh. B, ECF No. 17-2, 13:15-13:50; *see also* Exh. D, ECF No. 17-4, 1:00-15:00.)

Plaintiff alleges he fled the assault by climbing out of the driver's side door, at which point Diroff jumped on his back, again using a derogatory racial term, and pushed his face into the dirt while punching him "more than 20 times" about the face and head.  (ECF No. 1, PageID.9, ¶¶ 4-5.)  Saldana then arrived and continued the assault.  He punched Plaintiff in the head and face and "delivered 10-12 knee strikes to Plaintiff's head and neck" as Plaintiff tried to cover himself for protection.  (ECF No. 1, PageID.9, ¶ 6.)

After Diroff and Saldana secured his hands behind his back, McFadden tased Plaintiff in the right shoulder.  (ECF No. 1, PageID.10, ¶ 7.)  Plaintiff could hear Saldana ask Diroff what Plaintiff hit his face on, and Diroff responded, laughing, "my fist."  (ECF No. 1, PageID.10, ¶ 8.)  Ultimately, Plaintiff suffered a broken nose and contusions around his head.  (ECF No. 1, PageID.10, ¶ 9.)

Plaintiff asserts that even if he was resisting arrest, Defendants' actions were unreasonable, excessive, and sadistic, stating:

> Diroff claiming he was in fear of his life or his safety, or the lives or safety of others, is not consistent with his actions.  Diroff not only placed himself and others in harms way, by diving in the vehicle, grabbing the steering, and incap[a]citating the driver while the vehicle was moving and surrounded by dozens of extremely fast moving vehicles.

These actions placed himself, Plaintiff, and innocent travelers at a much higher risk than allowing Plaintiff to leave; where he could order a road-block or spike strips to disable the vehicle (not the driver while the car was in motion on a crowded public Highway).

Furthermore, once Plaintiff was out of the vehicle, Defendant's [sic] could have IMMEDIATELY Tased or gassed Plaintiff, there was no need to resort to the violence they employed.

Finally even if Defendant's [sic] claim they needed the violent force, in that circumstance, they over-killed. They didn't need to employ as many strikes as they chose to use. This over-kill is further indicator of their unreasonable and malicious application of force, and evil intent.

(ECF No. 1, PageID.11, ¶ 10.)

Counts I through IV of the complaint encompass Plaintiff's separate Fourth Amendment excessive force claims in connection with various defendants punching, elbowing, performing knee strikes and tasering Plaintiff while he was initially in the car and then later in the ditch. (ECF No. 1, PageID.12, ¶¶ 12-14.) Plaintiff's Eighth Amendment claims (Counts V through VIII) are divided in the same way as his Fourth Amendment claims. (ECF No. 1, PageID.13, ¶¶ 16-19.) Counts IX through XII assert violations of Plaintiff's equal protection rights under the Fourteenth Amendment. Specifically, Plaintiff claims that Defendants used excessive force against him in each of the above instances because he is Black. (ECF No. 1, PageID.14, ¶¶ 20-23.) In Counts XIII and XIV, Plaintiff claims that Saldana failed to intervene when Diroff used excessive force, and that McFadden failed to intervene when Diroff and Saldana used excessive force. (ECF No. 1,

PageID.14, ¶¶ 24-25.)  Finally, in Counts XV-XVIII, Plaintiff alleges assault and battery for each of the above listed incidents under Michigan common law.  (ECF No. 1, PageID.15, ¶¶ 27-30.)

### 2.    Instant Motion

On July 15, 2021, Defendants Diroff and Saldana (collectively for purposes of this Report and Recommendation, Defendants) filed a motion for summary judgment pursuant to Fed. R. Civ. P. 56, asserting qualified immunity from Plaintiff's constitutional claims (ECF No. 17, PageID.114-127), and governmental immunity from Plaintiff's state law intentional tort claims (ECF No. 1, PageID.127-129.)  In so doing, they attach incident reports and video footage from Saldana and Diroff's vehicle cameras.  (Exhibits A-D, ECF Nos. 17-1-17-4), and argue that the video evidence blatantly contradicts the allegations in Plaintiff's complaint (ECF No. 17, PageID.101-102.)

The court granted Plaintiff's motion for an extension of time to respond, and ordered that he respond to the motion by November 1, 2021 (Text-only order, 09-10-21), but Plaintiff filed his response in opposition one day late on November 22, 2021 (ECF No. 21).[3]  In a counter-statement of facts with no specific citations to

---

[3] Unlike the complaint, Plaintiff did not sign his response under penalty of perjury. However, the response does contain a notice that it was prepared with the assistance of a non-attorney prisoner assigned to the Legal Writer Program with the Michigan Department of Corrections.  (*See* ECF No. 21, PageID.155.)

the record, Plaintiff asserts that Diroff called for backup before he ran a LEIN check, demonstrating his racial bias, that he told Officer Diroff, "I don't feel safe. Something is not right[,]" just before Diroff entered the passenger side of the vehicle, that he was curled up in a fetal position to protect himself as Saldana began striking him, and that Defendants' claim that the video evidence controverts the complaint is overreaching.  (ECF No. 21, PageID.157-159.)

Relying heavily on his assertion that the videos produced by Defendants do not depict what occurred inside his vehicle and did not capture all of the relevant conversations, Plaintiff argues that material questions of fact remain with regard to his claims, and that he is not required to find a case directly on point to combat the second prong of qualified immunity.  (ECF No. 21, PageID.162-168.)  With regard to governmental immunity of his assault and battery claims, Plaintiff does not dispute that Defendants' action were undertaken during the course of employment, but asserts that taking the facts in the light most favorable to him in accordance with the summary judgment standards, Defendants: "[M]ay have begun their actions within the scope of their authority, but they knowingly exceeded that authority throughout their interaction with Plaintiff.  Defendants' claim of governmental immunity must fail for the same reasons that Defendants' claims of qualified immunity fail."  (ECF No. 21, PageID.169.)

In their reply brief, filed on November 19, 2021, Defendants assert that: (1) Plaintiff mischaracterizes facts clearly depicted in the videos; (2) Plaintiff's equal protection claims cannot survive summary judgment, as his speculation that a white female would have been treated differently, and that Defendants' statements concerning his car were a pretext for racial discrimination, are insufficient to demonstrate an equal protection violation; and (3) Plaintiff misunderstands qualified immunity jurisprudence.  (ECF No. 22, PageID.174-179.)

### B.    Standard

Under Fed. R. Civ. P. 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A fact is material if it might affect the outcome of the case under governing law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The Court "views the evidence, all facts, and any inferences that may be drawn from the facts in the light most favorable to the nonmoving party."  *Pure Tech Sys., Inc. v. Mt. Hawley Ins. Co.*, 95 F. App'x 132, 135 (6th Cir. 2004).

"The moving party has the initial burden of proving that no genuine issue of material fact exists . . . ."  *Stansberry v. Air Wis. Airlines Corp.*, 651 F.3d 482, 486 (6th Cir. 2011) (internal quotations omitted); *cf.* Fed. R. Civ. P. 56(e)(2) (providing that if a party "fails to properly address another party's assertion of fact," the court

7

may "consider the fact undisputed for purposes of the motion").  "Once the moving

party satisfies its burden, 'the burden shifts to the nonmoving party to set forth

specific facts showing a triable issue.'"  *Wrench LLC v. Taco Bell Corp.*, 256 F.3d

446, 453 (6th Cir. 2001) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio

Corp.*, 475 U.S. 574, 587 (1986)).

The nonmoving party "must make an affirmative showing with proper

evidence in order to defeat the motion."  *Alexander v. CareSource*, 576 F.3d 551,

558 (6th Cir. 2009); *see also Lee v. Metro. Gov't of Nashville & Davidson Cty.*,

432 F. App'x 435, 441 (6th Cir. 2011) ("The nonmovant must . . . do more than

simply show that there is some metaphysical doubt as to the material facts[.] . . .

[T]here must be evidence upon which a reasonable jury could return a verdict in

favor of the non-moving party to create a genuine dispute.") (internal quotation

marks and citations omitted).  "Such evidence submitted in opposition to a motion

for summary judgment must be admissible."  *Alexander*, 576 F.3d at 558 (internal

quotation marks and citations omitted).  In other words, summary judgment is

appropriate when the motion "is properly made and supported and the nonmoving

party fails to respond with a showing sufficient to establish an essential element of

its case[.] . . ."  *Stansberry*, 651 F.3d at 486 (citing *Celotex Corp. v. Catrett*, 477

U.S. 317, 322-23 (1986)).

The fact that Plaintiff is *pro se* does not reduce his obligations under Rule 56.  Rather, "liberal treatment of *pro se* pleadings does not require lenient treatment of substantive law." *Durante v. Fairlane Town Ctr.*, 201 F. App'x 338, 344 (6th Cir. 2006).  In addition, "[o]nce a case has progressed to the summary judgment stage, . . . 'the liberal pleading standards under *Swierkiewicz* [*v. Sorema, N.A.*, 534 U.S. 506, 512-13 (2002)] and [the Federal Rules] are inapplicable.' " *Tucker v. Union of Needletrades, Indus., & Textile Emp.*, 407 F.3d 784, 788 (6th Cir. 2005) (quoting *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004)).  The Sixth Circuit has made clear that, when opposing summary judgment, a party cannot rely on allegations or denials in unsworn filings and that a party's "status as a pro se litigant does not alter [this] duty on a summary judgment motion." *Viergutz v. Lucent Techs., Inc.*, 375 F. App'x 482, 485 (6th Cir. 2010); *see also United States v. Brown*, 7 F. App'x 353, 354 (6th Cir. 2001) (affirming grant of summary judgment against a *pro se* plaintiff because he "failed to present any evidence to defeat the government's motion").

### C.    Discussion

#### 1.    Plaintiff's constitutional claims

##### a.    Qualified immunity

Defendants assert entitlement to qualified immunity from Plaintiff's constitutional claims.  (ECF No. 17, PageID.114-127; ECF No. 22.)

9

Section 1983 claims are subject to the affirmative defense of qualified immunity.  *Regets v. City of Plymouth*, 568 F. App'x 380, 386 (6th Cir. 2014).  The doctrine of qualified immunity shields government officials performing discretionary functions from liability for civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Stoudemire v. Mich. Dep't of Corrections*, 705 F.3d 560, 567 (6th Cir. 2013) (quotation marks and citations omitted).

"A defendant bears the initial burden of putting forth facts that suggest that he was acting within the scope of his discretionary authority."  *Id*. at 568.  But ultimately, "the burden of proof is on the plaintiff to show that the defendants are not entitled to qualified immunity."  *Id*. (quotation marks and citation omitted).

### b.   Excessive force claims

Again, Plaintiff claims excessive force in violation of his Fourth Amendment rights against these two defendants for: (1) Diroff's punches and elbows to his head while in his vehicle; (2) Diroff's continuing punches in the ditch; and (3) Saldana's punches and knee strikes while he was restrained by Diroff in the ditch.  (ECF No. 1, PageID.12, ¶¶ 12-14.)  And he alleges that Saldana failed to intervene when Diroff used excessive force.  (ECF No. 1, PageID.14, ¶ 24.)  Further, Plaintiff claims that Diroff and Saldana violated his Eighth Amendment

right to be free from cruel and unusual punishment for the same conduct described above.  (ECF No. 1, PageID.13, ¶¶ 16-18.)

"Excessive force claims . . . can be raised under the Fourth, Eighth, and Fourteenth Amendments.  Which amendment should be applied depends on the status of the plaintiff at the time of the incident; that is, whether the plaintiff was a free citizen, convicted prisoner, or fit in some gray area between the two."  *Burgess v. Fischer*, 735 F.3d 462, 472 (6th Cir. 2013).  "Where . . . the excessive force claim arises in the context of an arrest or investigatory stop of a free citizen, it is most properly characterized as one invoking the protections of the Fourth Amendment . . . ."  *Graham v. Connor*, 490 U.S. 386, 394 (1989).  "[T]he Eighth Amendment's ban on cruel and unusual punishment bars excessive force against convicted persons."  *Burgess*, 735 F.3d at 472.  Accordingly, the Fourth rather than the Eighth Amendment applies here, and the Court should dismiss with prejudice Plaintiff's Eighth Amendment claims against Diroff and Saldana (ECF No. 1, PageID.13, ¶¶ 16-18), as Plaintiff concedes in his response brief (ECF No. 21, PageID.163).

According to the Sixth Circuit:

Under the Fourth Amendment, we apply an objective reasonableness test, looking to the reasonableness of the force in light of the totality of the circumstances confronting the defendants, and not to the underlying intent or motivation of the defendants. *Dunigan v. Noble*, 309 F.3d 486, 493 (6th Cir. 2004); *see also Graham*, 490 U.S. at 396-97, 109 S.Ct. 1865.  We balance "the nature and quality of the

11

intrusion on [a plaintiff's] Fourth Amendment interests against the countervailing governmental interests at stake." *Ciminillo v. Streicher*, 434 F.3d 461, 466-67 (6th Cir. 2006). In doing so, three factors guide our analysis: "'[(1)] the severity of the crime at issue, [(2)] whether the suspect poses an immediate threat to the safety of the officers or others, and [(3)] whether he is actively resisting arrest or attempting to evade arrest by flight.'" *Martin v. City of Broadview Heights*, 712 F.3d 951, 958 (6th Cir. 2013) (quoting *Graham*, 490 U.S. at 396, 109 S.Ct. 1865). These factors are assessed from the perspective of a reasonable officer on the scene making a split-second judgment under tense, uncertain, and rapidly evolving circumstances without the advantage of 20/20 hindsight. *Graham*, 490 U.S. at 396-97, 109 S.Ct. 1865.

*Burgess*, 735 F.3d at 472-73.

"We ask two questions in evaluating whether a law-enforcement officer is entitled to qualified immunity on an excessive-force claim: '(1) whether the officer violated the plaintiff's constitutional rights under the Fourth Amendment; and (2) whether that constitutional right was clearly established at the time of the incident.'" *Estate of Hill by Hill v. Miracle*, 853 F.3d 306, 312 (6th Cir. 2017) (quoting *Kent v. Oakland Cty.*, 810 F.3d 384, 390 (6th Cir. 2016)). "This analysis can be performed in any order." *Estate of Hill by Hill*, 853 F.3d at 312.

As Plaintiff claims excessive force with regard to Defendants' actions at different points during the overall incident, I will separately analyze each. *See Jackson v. Washtenaw Cty.*, 678 F. App'x 302, 306 (6th Cir. 2017).

### i. Diroff's actions while in Plaintiff's car

12

For the reasons that follow, the Court should find that Diroff is entitled to qualified immunity from Plaintiff's claim that he used excessive force while in Plaintiff's car.

Again, in Count I of Plaintiff's verified complaint, he claims that "Diroff's entry into [his] car and continually delivering numerous punches and elbows to [his] head and face was unreasonable, under the 4th Amendment, in light of the circumstances."  (ECF No. 1, PageID.12, ¶ 12.)  In so doing, he alleges that during the subject traffic stop: "Diroff forced entry into the passenger side of [his] car. Once Diroff was in the car he lunged at [him] screaming [a racially derogatory term], and commenced to (assault) and batter [him] by delivering 12-15 'straight punches to [his] face', and numerous elbow's [sic] to the face."  (ECF No. 1, PageID.9, ¶ 3.)

Applying the *Graham* factors listed above, *Burgess*, 735 F.3d at 472-73, even viewing the evidence in the light most favorable to Plaintiff, the Court should find that he has failed to establish a genuine issue of material fact that Diroff's use of force in the car was objectively unreasonable.  First, the severity of the crime at issue weighs, initially slightly and later heavily, in Diroff's favor.  *Id*. at 472. Although Plaintiff asserts in his unsworn response brief that he was driving a well-maintained vehicle and that he was only pulled over because he is Black, as evidenced in part by the fact that Diroff called for backup before running a Law

Enforcement Information Network (LEIN) check (ECF No. 21, PageID.157), an

incident report attached to Defendants' motion states that Diroff stopped Plaintiff

for improper lane use (ECF No. 17-1, PageID.133), the dashcam video shows the

stop initiated without any clear view of Plaintiff's race, and the video from Diroff's

internal patrol car camera depicts Diroff scanning Plaintiff's driver's license right

when he entered his vehicle and seemingly before he called for back-up (Exh. C,

ECF No. 17-3, 4:30-8:40), in direct contradiction to Plaintiff's assertions

otherwise.  The video is the best evidence as to when Diroff called for backup, and

Plaintiff's assumption that it was racially motivated is speculative and

unsubstantiated.  Further, the incident report indicates that when Diroff re-

approached Plaintiff's vehicle, he:

> observed several criminal indicators present at this time.  Tpr. Diroff
> noticed [Plaintiff's] fly to his pants was now unzipped.  Through his
> training and experience, this is consistent with attempting to hide
> narcotics or weapons.  Tpr. Diroff also observed ripped plastic
> baggies and tin foil on the driver's side floorboard.

(ECF No. 17-1, PageID.134.)  And Plaintiff makes no attempt to dispute these

statements in his response brief.  Thus, although the severity of the crime may have

initially entailed a minor traffic violation, it quickly and definitively elevated to a

considerably more serious level, warranting greater safety concerns for the police

officer, in light of Plaintiff's known parolee status and the indicia of drug or

weapon possession and concealment.  It would soon after be elevated even further

by Plaintiff recklessly fleeing the scene of the traffic stop, endangering both law-enforcement and the general public.  (ECF 17-1, PageID.142.)

Turning to the second and third factors, *Burgess*, 735 F.3d at 472-73, even viewing the evidence in Plaintiff's favor, there is no genuine dispute that Plaintiff posed an immediate threat to Diroff and others, and was attempting to flee on a highly trafficked interstate highway, cutting across multiple lanes of traffic.  The incident reports state that Diroff asked Plaintiff to exit his vehicle multiple times, but rather than follow the command, Plaintiff put the vehicle in drive in an attempt to flee (ECF No. 17-1, PageID.134, 142-143).  Specifically:

> As [Plaintiff] is attempting to put the vehicle into drive, Tpr. Diroff reaches into the open passenger side window to enter the vehicle and stop [Plaintiff] from fleeing.  Tpr. Diroff is able to enter the vehicle at the same time as [Plaintiff] is able to get the vehicle into drive. Fearing for his life, Tpr. Diroff tries to pin the steering wheel to disable the vehicle.  A struggle ensues over the steering wheel.  The vehicle enters south bound I-275 from the right shoul[d]er and veers to the left through all three lanes into the median.  The vehicle continues through the median and enters north bound I-275[4] into the left lane.  The vehicle proceeds to go back into the median becoming disabled due to the mud.
>
>                       \*   \*   \*
>
> During the flee and elude, Tpr. Diroff observes [Plaintiff] trying to reach into his pants through his fly to his crotch area.  Tpr. Diroff does not know if [Plaintiff] is reaching for a weapon or attempting to conceal contraband.  Again fearing for his life, Tpr. Diroff attempts to pin the steering wheel to disable the car while verbally telling [Plaintiff] to stop the vehicle.  Due to [Plaintiff's] active resistance,

---

[4] This is not completely obvious from the videos attached, as Plaintiff's vehicle goes slightly out of view when it approaches northbound I-275.

15

> Tpr. Diroff delivers 2-3 straight punches to [Plaintiff's] face while in
> the vehicle.  [Plaintiff] continues his active resistance/aggression by
> delivering elbow strikes to Tpr. Diroff's face.

(ECF No. 17-1, PageID.134-135; *see also* Supplemental Incident Report, ECF No.

17-1, PageID.142-143.)

Indeed, despite Plaintiff's assertion that there is no audio of his conversation

with Diroff before Diroff enters his vehicle (ECF No. 21, PageID.160), in the

video captured by Diroff's dashboard camera, Diroff can be heard asking Plaintiff

multiple times to exit his vehicle.  (Exh. B, ECF No. 17-2, 13:15-13:40.)  Further,

the video shows Diroff jumping into the passenger side of the vehicle *as it starts

moving*, and Plaintiff's car suddenly swerve and cross all lanes of oncoming traffic

on the freeway before coming to a stop in the median.  (Exh. B, ECF No. 17-2,

13:15-13:50; *see also* Exh. D, ECF No. 17-4, 13:30-15:00.)  And Plaintiff's

assertion that he put the car into drive because he was in fear for his life (ECF No.

21, PageID.158), is not supported by any of the video evidence; however, even if

true, it does not change that his attempt to flee resulted in danger to Diroff and the

general public.

However, the Court could find that Plaintiff has established a genuine issue

of material fact with regard to how many times Diroff punched and/or elbowed

Plaintiff while trying to wrestle control of the car's steering wheel.  Defendants,

supported by the statements made in the incident reports (ECF No. 17-1,

PageID.135, 143), assert that Diroff delivered two to three punches to Plaintiff's face while in the vehicle, but that Plaintiff actively resisted by elbowing Diroff (ECF No. 17, PageID.108-109).  In contrast, though, Plaintiff alleges, in his verified complaint, that Diroff punched him twelve to fifteen times in the face and elbowed him numerous times.  (ECF No. 1, PageID.9, ¶ 3.)  And although Defendants argue throughout their summary judgment motion that the videos attached in support directly contradict the majority of Plaintiff's allegations (*see* ECF No. 17, PageID.101-102), as Plaintiff points out (ECF No. 21, PageID.160), there is no video of what occurred inside his vehicle.

Nevertheless, even if the Court determined that Plaintiff established a genuine issue of material fact with regard to whether Diroff used excessive force while in Plaintiff's vehicle, it should find that he has failed to demonstrate that any violation of the Fourth Amendment by Diroff was clearly established at the time.

> In order for a right to be clearly established for the purposes of qualified immunity, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987).  This inquiry must be undertaken "in light of the specific context of the case, not as a broad general proposition." *Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001).  That is, "[t]he relevant, dispositive inquiry . . . is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id*. at 202, 121 S.Ct. 2151.

*Estate of Hill by Hill*, 853 F.3d at 316.

Plaintiff has provided no caselaw which demonstrates a prior articulation of a prohibition against the specific force exerted against him – that is, punches and elbows to the face and head, no matter how numerous, delivered while trying to de-mobilize a vehicle driven through multiple lanes of freeway traffic in an attempt to flee – such that a reasonable officer would have known that he was violating Plaintiff's Fourth Amendment rights under these circumstances. *Id.* (citing *Champion v. Outlook Nashville, Inc.*, 380 F.3d 893, 902 (6th Cir. 2004)). And I have not found any.

Instead, Plaintiff argues that he does not need to present caselaw directly on point which demonstrates that no reasonable officer would have believed such conduct to be lawful, citing *Taylor v. Riojas*, ___ U.S. ___, ___; 141 S.Ct. 52 (2020). (ECF No. 21, PageID.165-168.) This is a mischaracterization of the law. "'[T]here can be the rare "obvious case," where the unlawfulness of the officer's conduct is sufficiently clear even though existing precedent does not address similar circumstances.'" *Moderwell v. Cuyahoga Cty.*, 997 F.3d 653, 660 (6th Cir. 2021) (citations omitted). "Thus, when 'no reasonable . . . officer could have concluded' that the challenged action was constitutional, the Supreme Court has held that there does not need to be a case directly on point." *Id.* (citing *Taylor*, 141 S.Ct. at 53).

18

Considering the danger posed to both Diroff and the general public by Plaintiff's flight attempt, whether Plaintiff was scared or not, this is not such an obvious case. The number or type of blows delivered inside the car, in order to make Plaintiff bring the fleeing vehicle to a stop and avoid both an escape and a catastrophic accident at highway speeds, is not susceptible to a numerical formula. A standard whereby no reasonable officer would conclude that the real-time, urgent, quickly evolving and high-stakes actions taken here were constitutional is not readily apparent to the Court. It can hardly have been readily apparent to Defendant Diroff. Accordingly, Plaintiff fails to show that Diroff is not entitled to qualified immunity for his actions in Plaintiff's vehicle by not providing any caselaw that Diroff violated a clearly established right under the circumstances.

### ii. Force by Diroff and Saldana outside of Plaintiff's vehicle

For the reasons that follow, the Court should find that Defendants are not entitled to qualified immunity for the force they employed outside of Plaintiff's vehicle.

In support of Counts II and III of his complaint, Plaintiff alleges that:

[H]e fled Diroff's Assault by climbing out the Driver's side door. Diroff again abducted [him], jumping on [his] back, saying [a derogatory racial term], further yelling and cussing at [him].

Diroff then Drove [his] face into the dirt, stating [a derogatory racial term], continues raging with more cussing, while punching [his] head, face, and ears with both hands, more than 20 times; [He was] in

19

extreme pain and seeing-stars, dizziness, and in-and-out of consciousness.

Then Defendant (Saldana) arrived and commenced punching [him] in the face and head; and delivered 10-12 knee strikes to [his] head and neck; and [he] tried to cover his head to protect himself from the assault.

Then after both Diroff and Saldana -- painfully and forcefully -- pin and secure [his] arms behind [his] back, they roll Plaintiff onto his side, and Defendant (McFadden) Tazes [him] in his right shoulder.

(ECF No. 1, PageID.9-10, ¶¶ 4-7.)

Defendants present an alternative story in the attached incident reports.

Saldana states:

[Plaintiff] continues to reach into his crotch area and now pulls out an off white chunky substance that is suspected to be heroin. [Plaintiff] rips the bags open and attempts to conceal/get rid of the suspected heroin. [Plaintiff] is able to open the driver's side door. Tpr. Diroff is able to get over to the driver side of the vehicle while attempting to handcuff [Plaintiff].

Meanwhile, BP Agent McFadden and I are able to position my patrol vehicle on the left shoulder. BP Agent McFadden and I run up to the suspect's vehicle. [Plaintiff] is actively resisting Tpr. Diroff by digging his hands into the dirt trying to conceal suspected heroin and by not putting his hands behind his back. Tpr. Diroff is continually verbal direction to [Plaintiff] by telling him to put his hands behind back. [Plaintiff] continues to actively resist by not putting his hands behind his back. Tpr. Diroff delivers 2-3 straight arm punches to [Plaintiff's] face while I delivered 2-3 knee strikes to [Plaintiff's] right common peroneal. The straight arm punches and knee strikes were ineffective and [Plaintiff] continued to actively resist. Tpr. Diroff and I told BP Agent McFadden to tase [Plaintiff] in order to get him to comply. BP Agent McFadden fired his departmental taser and connected to [Plaintiff's] back/right shoulder area. After one five second cycle, [Plaintiff] immediately became compliant. Tpr. Diroff

and I also immediately decreased our use of force and successfully
handcuffed [Plaintiff].

(ECF No. 17-1, PageID.135.)  Further, Diroff states:

> [Plaintiff] began fumbling with the vehicle's gear selector in an
> attempt to get the vehicle into drive.  I opened the front passenger
> door and attempted to prevent [Plaintiff] from getting the vehicle into
> drive, which I was unsuccessful in doing.  The vehicle jolted forward
> as [Plaintiff] held down the accelerator.  [Plaintiff] and I both fought
> to control the steering wheel.  The vehicle went across all three lanes
> of southbound traffic, into the grass median.  In an attempt to break
> [Plaintiff's] grip on the steering wheel and to prevent the vehicle from
> entering the northbound lanes of travel head-on, I conducted 2 or 3
> straight punch strikes to [Plaintiff's] face.  [Plaintiff] struck me at
> least once with either a fist or elbow just left of my left eye.  The
> vehicle briefly went into the left northbound lane before spinning back
> into the grass median, where it became disabled in the mud.
> [Plaintiff] opened the driver door and attempted to flee the vehicle.
> [Plaintiff] reached into his pants through the open zipper and removed
> a bag containing a large chunk of off white compact powder substance
> that I suspected to be heroin.  [Plaintiff] ripped the bag open, crushed
> the chunk in his hands, and then began pushing the pieces into the
> mud while laughing.  [Plaintiff's laughter audible on dash cam] At
> this time I was struggling to wrestle [Plaintiff] into a position to
> handcuff him while giving him loud verbal commands to stop.
> [Plaintiff] continuously struggled to get to his feet.  I delivered
> straight punches to [Plaintiff's] face and gave him loud verbal
> commands to put his hands behind his back.  The punches were not
> effective.  [Plaintiff] continued struggling to get up.  Tpr. Saldana and
> Agent McFadden made it to the area of the struggle.  Tpr. Saldana
> delivered at least one knee strike to [Plaintiff].  The strike was not
> effective.  Agent McFadden deployed his Taser into the shoulder of
> [Plaintiff].  The Taser was effective and caused [Plaintiff] to
> discontinue resisting arrest and lay down on his stomach.  Tpr.
> Saldana and I secured [Plaintiff] in handcuffs.  The use of force was
> immediately halted.

21

(ECF No. 17-1, PageID.143.)  And Defendants rely heavily on the video footage attached to their motion to argue that it directly contradicts Plaintiff's allegations and confirms their assertions that they delivered an appropriate amount of force in response to Plaintiff's active resistance.  (ECF No. 17, PageID.101-102, 116-121; Exhibits B, C, and D, ECF Nos. 17-2-17-4; ECF No. 22, PageID.174-175.)

I have extensively reviewed the footage of the incident outside of Plaintiff's vehicle captured by Saldana's dashcam, and only one thing is certain—that it does not clearly confirm or contradict either side's description.  The camera is positioned at a distance and the details are difficult to see, but it appears that Diroff punches Plaintiff many more than two or three times asserted by Defendants (ECF No. 17-1, PageID.135, 142-143), but far fewer than 20 times, the amount alleged by Plaintiff (ECF No. 1, PageID.9-10, ¶¶ 4-7).  (Exhibit D, ECF No. 17-4, 5:00-6:30.)  And the number of knee strikes Saldana used appears far less than Plaintiff contends, but the exact number is unclear.  (Exhibit D, ECF No. 17-4, 5:00-6:30.)  Further, it does not appear that Plaintiff is "in a fetal position with Defendant Diroff on top of him throwing punches" and is "making no attempts to flee or resist, but is merely curled to protect himself from the blows being rained upon him by Defendant," as he asserts in his unsworn response brief (ECF No. 21, PageID.158), but it is also not clear from the footage whether Plaintiff has his arms

22

tucked under his chest in an effort to actively resist arrest or hide contraband, as

Defendants argue.  (ECF No. 17, PageID.119.)

> Our cases firmly establish that it is *not* excessive force for the police
> to tase someone (even multiple times) when the person is actively
> resisting arrest.  *Hagans v. Franklin Cnty. Sheriff's Office*, 695 F.3d
> 505, 509 (6th Cir. 2012); *e.g. Williams v. Sandel*, 433 Fed.Appx. 353,
> 363 (6th Cir. 2011) (not excessive force to tase the suspect *thirty-
> seven* times (and use batons and pepper spray) because he actively
> resisted arrest).  Active resistance includes "physically struggling
> with, threatening, or disobeying officers."  *Cockrell v. City of
> Cincinnati*, 468 Fed.Appx. 491, 495 (6th Cir. 2012) (collecting cases).
> And it includes refusing to move your hands for the police to handcuff
> you, at least if that inaction is coupled with other acts of defiance.
> *Caie v. W. Bloomfield Twp.*, 485 Fed.Appx. 92, 94, 96-97 (6th Cir.
> 2012); *see Williams v. Ingham*, 373 Fed.Appx. 542, 548 (6th Cir.
> 2010).  But active resistance does not include being "compliant or
> hav[ing] stopped, resisting," *Hagans*, 695 F.3d at 509; or having
> "done nothing to resist arrest," or having "already [been] detained,"
> *Cockrell*, 468 Fed.Appx. at 496 (collecting cases).  *E.g., Eldridge v.
> City of Warren*, 533 Fed.Appx. 529, 535 (6th Cir. 2013) . . . .  A
> simple dichotomy thus emerges: When a suspect actively resists
> arrest, the police can use a taser (or a knee strike) to subdue him; but
> when a suspect does not resist, or has stopped resisting, they cannot.

*Rudlaff v. Gillispie*, 791 F.3d 638, 641-42 (6th Cir. 2015).

As the level of Plaintiff's resistance, as well as the amount of force used, are

integral to the Court's decision on each prong of qualified immunity, and the above

demonstrates the existence of a genuine issue of material fact as to each, the Court

should decline to grant summary judgment on Plaintiff's excessive force claims

against Defendants for their actions outside of the vehicle on that basis.  *See Shreve

v. Jessamine Cty. Fiscal Ct.*, 453 F.3d 681, 686-87 (6th Cir. 2006) (holding that

striking a person repeatedly with a stick for fifteen minutes when the individual

refused to produce her hands for cuffing but had already been incapacitated by

pepper spray could "not be deemed reasonable under the excessive force test set

forth in *Graham*"); *Phelps v. Coy*, 286 F.3d 295, 301-02 (6th Cir. 2002) (finding

that no reasonable officer could have found it necessary to continue beating the

plaintiff after he had been tackled and handcuffed). The Sixth Circuit's decision in

*Tapp v. Banks*, 1 F. App'x 344 (6th Cir. 2001) is especially informative. The

Court held that:

> While it is objectively reasonable that an officer would be both agitated and highly apprehensive after a dangerous, lengthy high-speed pursuit such as this, it is not objectively reasonable for an officer dealing with an essentially compliant person, to strike the person's legs twelve to fifteen times in the absence of resistance. Viewing the evidence in the light most favorable to Tapp and rejecting the evidence proffered by Banks, which the court must do for this analysis, a finder of fact could conclude that Tapp had suddenly decided to "surrender" after giving up the chase and was thereupon "punished" by an officer in retaliation for running and endangering citizens and other officers. Such actions by an officer would offend the Fourth Amendment and would not be saved by a qualified immunity analysis. Thus, a genuine issue of material fact exists as to whether Tapp's Fourth Amendment rights were violated. Tapp's excessive force claim should have survived, and we will remand this claim to the district court for further proceedings consistent with this opinion.

*Id*. at 350-51. In sum, Plaintiff's portrayal of the officers' actions as "over-

kill" frames the question of fact for trial rather since succinctly (ECF No. 1,

PageID.11, ¶ 10): while some level of force was clearly appropriate under

the circumstances, the question remains as to whether the force actually employed was overkill.

### iii.    Failure to intervene

In Count XIII of Plaintiff's complaint, he claims that Saldana failed to intervene when Diroff committed excessive force against Plaintiff. (ECF No. 1, PageID.1, PageID.14, ¶ 24.) He does not make a similar claim with regard to Diroff.

As Defendants argue only that "in the absence of any predicate excessive use of force, there can be no derivative failure to intervene claim against Diroff or Saldana" (ECF No. 17, PageID.121-122 n.5), and Defendants have not established entitlement to qualified immunity from Plaintiff's excessive force claims against them regarding their actions outside of the vehicle, the Court should decline to grant summary judgment on Plaintiff's failure to intervene claim against Saldana.

### iv.    Fourteenth Amendment equal protection claims

In Counts IX through XI of Plaintiff's complaint, he claims that Defendants used excessive force against him in each instance described above to punish him because he is Black, in violation of his equal protection rights under the Fourteenth Amendment. (ECF No. 1, PageID.14, ¶¶ 20-22.) In so doing, he alleges that Diroff used derogatory racial terms while applying force against him both inside and outside of the vehicle. (ECF No. 1, PageID.3, 9, ¶¶ 3-5.) Further, in his

unsworn response brief, Plaintiff attempts to support these claims by asserting that Defendants' behavior throughout the incident is indicative of racial animus.  For example, Plaintiff asserts that he was driving a well-maintained vehicle while Black, that Saldana remarked to McFadden and Diroff that he knew Diroff would go after Plaintiff's vehicle, and that Diroff and Saldana stated that he was probably on parole.  (ECF No. 21, PageID.156-158, 163-164.)  Plaintiff also argues that "[l]ikely a Caucasian female motorist would not have been stopped and if stopped, would not have been struck in the face, and once detained on the ground and crying out would not have been beaten further and tased."  (ECF No. 21, PageID.165.)

The Equal Protection Clause of the Fourteenth Amendment provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws."  U.S. Const., Amend. XIV, § 1.  To prove an equal protection violation in this context, Plaintiff "must show intentional discrimination against him because of his membership in a particular class."  *Harris v. City of Circleville*, 583 F.3d 356, 369 (6th Cir. 2009).

Defendants argue that the video evidence blatantly contradicts Plaintiff's allegations, citing Exhibits B and C which they assert demonstrate that Diroff never uses any racial epithets against Plaintiff (ECF No. 17, PageID.123-124), and in my review of the video footage, I did not hear Diroff use the term alleged.

However, the summary judgment standard requires that the Court "view[] the evidence, all facts, and any inferences that may be drawn from the facts in the light most favorable to" Plaintiff, *Pure Tech Sys., Inc.*, 95 F. App'x at 135, and the audio is difficult to hear at various times, especially once Plaintiff and Diroff are on the ground outside of Plaintiff's vehicle (Exh. B, ECF No. 17-2, 13:30-15:00; Exh. C, ECF No. 17-3, 13:00-15:00; Exh. D, ECF No. 17-4, 5:00-8:00).  Taking as true Plaintiff's allegation that Diroff used derogatory racial terms while applying force, then, a reasonable jury could infer that Diroff used excessive force against Plaintiff while on the ground outside of his vehicle because of Plaintiff's race.  *See King v. City of Columbus*, No. 2:18-cv-1060, 2021 WL 3367507, at *7 (S.D. Ohio Aug. 3, 2021) ("[U]nder King's version of events, Mason used unconstitutionally excessive force and followed it up with a racial slur.  If the jury credits King's evidence, it could reasonably infer (or not infer), that Mason's shooting of King was motivated by racial animus.  If Mason fired upon King based on racial animus and not a threat of serious bodily injury, a jury could find that Mason deprived King of his constitutional right because of his race.").

Defendants' additional arguments that Plaintiff cannot demonstrate an equal protection violation without an allegation that he was treated different from similarly situated individuals (ECF No. 17, PageID.123-124), and that Plaintiff's comparison to a white female is insufficient (ECF No. 22, PageID.176), also fail.

27

Had Plaintiff alleged selective enforcement, *see Cunningham v. Sisk*, 136 F. App'x

771, 774-75 (6th Cir. 2005), these arguments may have been valid, but as

Defendants agree (ECF No. 22, PageID.177), Plaintiff is not alleging that

Defendants violated his Fourteenth Amendment rights by selectively enforcing the

law to pull him over.[5] Accordingly, the Court should decline to grant summary

judgment on Count X of Plaintiff's complaint, in which he claims that "Diroff

excessively punched [him] in the head, face, and ears with both hands -- while [he]

was in the ditch -- to harm and punish [him] because he's Black, in violation of

Equal Protection under the 14th Amendment."  (ECF No. 1, PageID.14, ¶ 21.)

      In contrast, the Court should grant summary judgment on Counts IX and XI.

Should the Court agree with my above analysis that Diroff is entitled to qualified

immunity from Plaintiff's excessive force claim against him for the force used

while in the car, Plaintiff's claim that Diroff used excessive force in that instance

because of his race necessarily fails.

_____

[5] In the Introduction section of Plaintiff's complaint, he specifically states:

> In general, Plaintiff invites this Honorable Court to decide: whether
> the force was objectively reasonable in light of the facts and
> circumstances; whether the force was applied maliciously and
> sadistically to cause harm; and whether the force was applied as
> punishment for Plaintiff being (Black) African-American.

(ECF No. 1, PageID.3.)

With regard to Plaintiff's equal protection claim against Saldana, he makes no specific allegations in his complaint that Saldana used excessive force against him because of his race, alleging only that Diroff, not Saldana, used racially derogatory terms while applying force against him.  (ECF No. 1, PageID.9, ¶¶ 3-5.) And the assertions in Plaintiff's unsworn response brief that Saldana made comments about Plaintiff's parolee status and belief that Diroff would pull over Plaintiff (ECF No. 21, PageID.157-158) fail to establish a genuine issue of material fact that Saldana used excessive force against Plaintiff because of his race in violation of his Fourteenth Amendment equal protection rights.  *Viergutz*, 375 F. App'x at 485.  "Section 1983 does not permit individuals to sue state actors in the abstract; it requires them to connect alleged constitutional violations of the individuals' rights to state conduct."  *Thomas v. Nationwide Children's Hosp.*, 882 F.3d 608, 614 (6th Cir. 2018).  In other words, a Plaintiff must demonstrate that the individual defendant was personally involved in the activity forming the basis of the complaint.  *Rizzo v. Goode*, 423 U.S. 362, 372-73 (1976); *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984).  Accordingly, the Court should grant summary judgment on Plaintiff's Fourteenth Amendment equal protection claim against Saldana, and dismiss with prejudice Count XI of the complaint.

## 2. Plaintiff's state law claims

In Counts XV through XVII of Plaintiff's complaint, he alleges assault and battery against Diroff and Saldana for each of the three incidents that give rise to Plaintiff's excessive force claims.  (ECF No. 1, PageID.15, ¶¶ 27-29.)  Defendants assert entitlement to governmental immunity from these claims.  (ECF No. 17, PageID.127-129.)

> Under Michigan law, "[a]n assault is defined as any intentional unlawful offer of corporal injury to another person by force, or force unlawfully directed toward the person of another, under circumstances which create a well-founded apprehension of imminent contact, coupled with the apparent present ability to accomplish the contact." *Espinoza v. Thomas*, 189 Mich.App. 110, 472 N.W.2d 16, 21 (1991). "A battery is the willful and harmful or offensive touching of another person which results from an act intended to cause such a contact." *Id*.

*Estate of Hill by Hill*, 853 F.3d at 316-17.

> The Michigan Supreme Court in *Odom* [*v. Wayne County*, 482 Mich. 459, 760 N.W.2d 217 (2008),] held that a defendant did not need to show that his actions were "justified" or "objectively reasonable under the circumstances" in order to qualify for governmental immunity. *Id.* at 220, 229.  Instead, an officer who commits an intentional tort is entitled to governmental immunity if he shows that "(a) the acts were undertaken during the course of employment and the employee was acting, or reasonably believed that he was acting, within the scope of his authority, (b) the acts were undertaken in good faith, or were not undertaken with malice, and (c) the acts were discretionary, as opposed to ministerial." *Id.* at 228.

*Estate of Hill by Hill*, 853 F.3d at 317.  "[M]alicious intent is defined as 'conduct or a failure to act that was intended to harm the plaintiff . . . [or] that shows such indifference to whether harm will result as to be equal to a willingness that harm

30

will result.'"  *Brown v. Lewis*, 779 F.3d 401, 420 (6th Cir. 2015) (quoting *Odom*, 760 N.W.2d at 225).  Thus, the test is subjective rather than objective.  *Id.*

Plaintiff does not dispute that Defendants' actions were undertaken during the course of their employment or were discretionary as opposed to ministerial, but asserts that they did not reasonably believe they were acting within the scope of their authority, as "they knowingly exceeded that authority throughout their interaction[.]"  (ECF No. 21, PageID.169.)  Taking as true Plaintiff's allegations that Diroff repeatedly hit him in the ditch while calling him a derogatory racial term, and that Saldana continued to assault him while he was trying to cover his head to protect himself (ECF No. 1, PageID.9, ¶¶ 4-6), as was done above in finding that Plaintiff demonstrated genuine issues of material fact as to each, a jury could find that Diroff's and Saldana's actions were undertaken with malice or the intent to harm Plaintiff.  Accordingly, the Court should decline to grant summary judgment on Counts XVI and XVII of Plaintiff's complaint.

However, the Court should grant summary judgment on Count XV of Plaintiff's complaint, and dismiss with prejudice the assault and battery claim against Diroff while in Plaintiff's vehicle, for the same reasons stated above related to the analogous excessive force claim.  Despite a potential genuine issue of material fact regarding the number of times Diroff struck Plaintiff while attempting to gain control of the steering wheel, Plaintiff does not contest that he was

31

attempting to flee, and the video footage depicts an incredibly dangerous situation on a busy freeway, foreclosing any argument that Diroff acted with malicious intent or bad faith by using force to stop the vehicle.  Further, Plaintiff has presented no precedent in which a court has declined to grant governmental immunity under similar circumstances.

**D.    Conclusion**

The video evidence in this case, shot from various perspectives, engenders very little sympathy or support for Plaintiff's position.  A routine traffic stop by a seemingly calm and polite state trooper suddenly spirals into a major, nearly deadly incident on the Plaintiff's refusal to obey what appears to be a lawful command to get out of his car and his own abrupt attempt to flee from the scene. In the Undersigned's view, the only thing that stands between Plaintiff and summary judgment is the lack of complete clarity in the audio-visual evidence at certain disputed points.  However, Plaintiff has declared under penalty of perjury that he was the recipient of racial epithets and excessive force at certain moments in time for which there is no conclusory evidence to the contrary.  The Court should therefore **GRANT IN PART** and **DENY IN PART** the motion for summary judgment filed by Defendants Adam Diroff and Daniel Saldana and leave it for the jury to sort out whether excessive or malicious force was used and equal protection violations occurred once Plaintiff was outside of the car.  (ECF No. 17.)

Preliminarily, although Defendants make no specific argument regarding Plaintiff's claims against them in their official capacities in the instant motion, as part of the Undersigned's screening function, it is recommended that all damage claims against the individual defendants in their official capacities should be dismissed as barred by the Eleventh Amendment. All claims against McFadden in his individual capacity remain (Counts IV, VIII, XII, XIV, XVIII), as he was not a party to the instant motion. However, the Court should grant summary judgment on Plaintiff's Eighth Amendment claims against Diroff and Saldana (Counts V, VI, VII), Plaintiff's excessive force claim against Diroff for his actions while in Plaintiff's vehicle (Count I), Plaintiff's Fourteenth Amendment claims against Diroff while in the vehicle (Count IX), and against Saldana (Count XI), and Plaintiff's assault and battery claim against Diroff for his actions while in Plaintiff's vehicle (Count XV). This would result in dismissal with prejudice of Counts I, V-VII, IX, XI, and XV. The Court should deny summary judgment as to Counts II, III, IV, VIII, X, XII, XIII, XIV, XVI, XVII, XVIII, insofar as Defendants are sued in their individual capacities.

## III.   PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule

72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Hum. Servs.*, 932 F.2d 505 (6th Cir. 1991).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health & Hum. Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Tchr's, Loc. 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc*.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc*.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

**IT IS SO ORDERED.**

Dated:  December 28, 2021

Anthony P. Patti
UNITED STATES MAGISTRATE JUDGE